IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AUDREY CURETTE,       § | |
|     Plaintiff,       § | |
| § | |
| v.       § | Civil Action No. 4:21-cv-2839 |
| § | jury |
| CHEVRON CHEMICAL CO., LLC       § | |
| & CHEVRON CHEMICAL CO., LP       § | |
|     Defendant.       § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Audrey Curette is a cybersecurity professional who has worked for Defendant Chevron Phillips some 15 years and in the IT field for over 25. She has received positive reviews and never been the subject of a disciplinary or adverse performance action. After she—a Black, African-American employee—complained of racial discrimination, her manager pushed her to move to a job in Conroe. It was promised to be a promotion that would open further doors.

She had turned down the Conroe position twice before but was eager to get out of her current work environment and trusted it was a true promotion. So she gave up her job at the Cedar Bayou plant—five minutes from her home—and took what was said to be one as a Server/LAN analyst. Instead, she was required to perform duties consistent with Help Desk work done at the start of her IT career.

Management overruled her objections to the bait-and-switch and denied repeated requests to lateral her into another job. While she was out on FMLA due to the stress, her supervisor disclosed her medical absence to a hiring manager for another job with Defendant.

She sues under 42 U.S.C. § 1981 and for FMLA retaliation.

# I. JURISDICTION[1]

1. This Court has federal question (28 U.S.C. § 1331) jurisdiction because the suit arises under 42 U.S.C. § 1981 and 1981a *et seq.* The Court also has jurisdiction under statutes such as 28 U.S.C. § 1343 (enforcement of civil rights).

# II. PARTIES, SERVICE, AND VENUE

2. Plaintiff is an individual, residing in Harris County within the Southern District of Texas.

3. Defendants Chevron Phillips Chemical Company (both LP and LLC) are corporate entities, believed to be incorporated in Delaware but with an operating headquarters in Montgomery County within the Southern District of Texas. For simplicity, they are referred to collectively as "Defendant," "Chevron Phillips," or both.

   3.1. It is not clear to Plaintiff which of the two Defendants controlled which employment decisions for the matters in dispute here, so for the sake of caution she names them both as parties. If Defendants identify one of them to her as a sole appropriate party, Plaintiff can dismiss the other of them.

4. Defendant Chevron Phillips Chemical Company, LP may be served by way of its registered agent: C T Corporation System; 1999 Bryan St., Ste. 900; Dallas, TX 75201-3136.

---

[1]Assertions in this pleading are made in addition and in the alternative to each other. They are based on the limited amount of information available pre-discovery and so subject to correction and clarification as the case develops.

5. Defendant Chevron Phillips Chemical Company, LLC may be served likewise: C T Corporation System; 1999 Bryan St., Ste. 900; Dallas, TX 75201-3136.

6. Venue is appropriate in the Southern District of Texas, Houston Division, for reasons such as that it is where Defendant has a Texas headquarters, it is where the events giving rise to the suit arose, and it is where Plaintiff lives.

### III. LEGAL CONTEXT

7. 42 U.S.C. §1981 *et seq.* originated with the Civil Rights Act of 1866, guaranteeing rights among which are "to make and enforce contracts" to the same degree "as is enjoyed by white citizens."

    7.1. To "make and enforce contracts" has been defined to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

8. 42 U.S.C. §1981a *et seq.* is a more recent amendment to the original law and provides additional civil rights protections.

9. Among the contractual relationships to which these laws traditionally are applied are those in the work setting, even for at-will employees.

10. The Family and Medical Leave Act of 1993 ("FMLA"—29 U.S.C. § 2601 *et seq.*) protects the rights of employees to take time off for covered medical conditions.

11. The FMLA makes it unlawful for an employer to retaliate in any manner against an individual for exercising rights under the law. 29 U.S.C. § 2615.

## IV. FACTUAL CONTEXT

12. Plaintiff Audrey Curette is a Black/African-American citizen.

13. At its highest levels, Defendant is publicly committed to diversity. In March 2021, it named as its CEO Bruce Chinn, who identifies as African American.

14. Unfortunately that commitment to inclusion does not always work its way down to situations involving staff members like Plaintiff.

15. She is not aware of African Americans working at a senior level in Information Technology for Chevron Phillips in Texas. Nor does she regularly encounter Black IT staff members at other levels.

16. She has worked for Chevron Phillips for over 15 years.

17. During this career, she received consistently positive performance evaluations and was never subject to an adverse conduct or performance action.

18. She is an expert in cybersecurity, with a Bachelor of Science degree (2004) in Information Technology, and is a Microsoft Certified Professional.

19. Plaintiff started her career in Information Technology doing IT support work, then advanced to becoming a Database/Network Administrator.

20. She joined Chevron Phillips in 2006 as a Systemss Analyst and soon advanced to being a Process Control Network Administrator.

21. In 2011, she became an Industrial Control Systems Security Analyst, ending up at the Cedar Bayou, Texas facility.

22. While in this job, she went to HR in 2016 with concerns about racially discriminatory conduct.

23. Finally, in early January 2017, management moved her unit under a different reporting structure, working out of a small office in the administration building for which security precautions required the door to be kept closed.

24. While in that office she experienced racial hostility from a nearby coworker and so continued to report the problems to HR/management, eventually leading to her being moved into her own office later in 2018.

25. In early 2019, her manager at the time began to urge her to move from her job at the Cedar Bayou location for what he said would be a promotion at the Conroe plant that would increase the responsibility level of her duties and make her part of the leadership team.

    25.1. In hindsight, this manager appears to have been less motivated by a desire to advance Plaintiff's career than a desire to be free from the disruptions resulting from some of his staff's being unwilling to work collegially with a Black employee and from that Black employee objecting to this. That is, were she White and had she not complained of racial issues, she would still be at Cedar Bayou or at least would have been given a true promotion.

26. Plaintiff was very hesitant to leave the Cedar Bayou plant, which was about a five-minute drive from her house. In fact, she had twice turned down opportunities to relocate to the Conroe facility.

27. She relented and agreed to the new job in Conroe given the need to escape the work environment at Cedar Bayou and given the promise the new position was

a promotion as to pay, level of duties, and in making her part of the leadership team so she could later become a supervisor.

28. As a result, she has been assigned to a Server/LAN Analyst position in Conroe since September 2019.

29. To her disappointment, she realized over time that while Defendant had increased her pay, they effectively had demoted her in responsibility.

30. For example, in the new job she was repeatedly called on to perform duties consistent with IT Help Desk jobs—the sort of work she had not done since starting her IT career, now some 25 years ago. She also was not allowed to make meaningful contributions like a true member of leadership would be.

31. She realized she was being expected to perform the duties of a much more junior IT person, who is White, and who had been moved to her old (Cedar Bayou) facility around the time she was moved to Conroe.

32. Her objections to having been misled into taking the transfer were overruled.

33. True, management/HR conducted an investigation of her related complaints and said that she would be provided with a copy of the findings.

34. But then she was simply told no wrongdoing was found and was denied a copy.

35. Eventually, the stress of the work environment grew so problematic that she went on leave, utilizing benefits under the Family and Medical Leave Act.

36. She remains on sick leave as of the time of the filing of her original complaint.

37. In an effort to mitigate her damages and to relieve her suffering, she repeatedly sought other positions with the company.

37.1. These were positions for which she was well-qualified and that were lateral moves such that Defendant could have moved her into one of the jobs without competition, as it regularly does for other, White, employees.

38. As a further effort at mitigation and to protect her rights, she retained an attorney to work with Defendant to find another position with Defendant.

39. But Defendant demonstrated no real interest in ameliorating Plaintiff's suffering, notwithstanding her over 15 years with the company and her solid record as a high-performing employee.

40. Around mid-July 2021, she observed that her online employee profile notated that she was last promoted in June 2011 (versus management's having described the September 2019 move to Conroe to her as a promotion) and that the field for "Is manager?" was answered "no."

41. With a diminution in duties at the new job, the transfer has made it *less* likely she could be promoted in the future, contrary to Defendant's promises.

42. Plaintiff observed over the years how Defendant readily moved other employees who were White around, and without misrepsentation to the employee involved, when it was deemed to serve Defendant's interest, even if it meant selecting someone less qualified than her. When Defendant desired to, it had at one time moved her without competition into another position so that she could help on a particular task for which her expertise was needed.

43. Given facts such as those above, it is more likely than not that, but for her race, Plaintiff Curette would not have been subjected to the actions such as

being misled into moving to the Conroe plant in September 2019 for a job falsely described as a promotion to higher level responsibilities.

44. When others with similar or lower qualifications, but who were not Black/African American [and particularly if Black and female] like her, sought to move to other positions, they were allowed to do so, but she was not.

45. As a result, in 2021 she was not selected for jobs such as:

   45.1. Operations COE Supervisor (applied 03/24/2021);

   45.2. Applications Systems Analyst (applied 04/06/2021);

   45.3. Supervisor, Digital Workplace Services (applied 06/02/2021);

   45.4. IT Security Analyst (applied 6/4/2021);

   45.5. Industrial Control Systems Security Analyst (filled in late June 2021, apparently without announcement of the opening in a manner that would alert Plaintiff, by a person of the initials PV, who is not known to be Black).

   45.6. LAN/Server Administrator (applied 07/22/2021); and

   45.7. Application Supervisor (applied 07/22/2021 and still under review at time of filing the suit, but expected to be a non-selection given the overlap in hiring and/or interviewing officials with jobs like those above).

46. As to at least one of these non-selections, the hiring manager was notified by Plaintiff's supervisor for the Conroe position that she was absent for medical reasons.

   46.1. This occurred in a period when Plaintiff was on FMLA leave.

46.2. This was a willful act in that the Supervisor either knew his conduct was illegal or showed reckless disregard for whether he acted unlawfully.

47. As to one or more of these non-selections, Plaintiff is believed to have been substantially more qualified than the selectee, given her some 25 years of experience in the IT field and solid performance record at Chevron Phillips.

## V. LEGAL CLAIMS

48. Plaintiff asserts that the misleading transfer that was actually a demotion in duties and the subsequent non-selections each were because of one of the following prohibited reasons.

## A. DISCRMINATION BASED ON RACE

49. At the time of the challenged action, the decisionmakers and/or one or more persons who influenced them, were aware of Plaintiff's race.[2]

50. Plaintiff was subjected to adverse actions because of her race, when persons of other ethnicities were treated more favorably.

51. For example, among other people moved within the company, Plaintiff is not aware of any White employees who were misled into believing they were getting a promotion when in reality they suffered a demotion in duties.

---

[2] The IT managers for Defendant in the Houston area are a relatively small group who often have worked together for years and a number of them socialize outside of working hours. It is more likely than not that those making hiring decisions knew or would have been informed that Plaintiff is Black, that she engaged in protected EEO activity, that she was on extended medical leave, or some combination of those. Or decisionmakers adversely were influenced by those aware of such facts, such as along the lines of, "she's a complainer" or "Audrey's been off work for weeks," etc..

52. Plaintiff is aware of White employees who have been allowed to move into other positions in the company, when she has not, even when the positions she sought would have involved a lateral transfer.

53. One or more of the persons selected for the positions identified above are believed to be other than Black/African American.

54. In summary, the treatment she received as a Black/African-American citizen compared disfavorably with that granted as to one or more of the benefits, privileges, terms, and conditions of the contractual relationship with Defendant, versus what was granted to persons not Black/African American.

### B. DISCRIMINATION BASED ON EEO REPRISAL

55. At the time her chain of command pushed her to accept the Conroe position under the ruse it would be a promotion and enable her to move into management, one or more of those involved was aware of and displeased with her EEO activity.

56. For example, her supervisor at the Cedar Bayou plant was aware that her complaints had led to an investigation and relocation of Plaintiff's unit and/or that Plaintiff made further objections about the race-based hostility she continued to experience after initially being reassigned in late December 2016.

57. Likewise, as to one or more of the non-selections identified above, those involved in making the decisions, and/or those who influenced them, were

aware that Plaintiff had engaged in protected EEO activity, such as complaining that she had been tricked into a demotion with the Conroe move.

58. But for Plaintiff's EEO activity, she would not have been misled into the demotion at Conroe, would not have suffered one or more of the non-selections described above, or both.

59. Persons who did not engage in activity protected under §1981 were treated more favorably, such as by being given actual promotions or being granted lateral moves when they sought them.

60. A demotion disguised as a promotion and a non-selection are each a sufficiently adverse action that they objectively could be expected to discourage another employee from exercising rights under 42 U.S.C. § 1981.

### C. REPRISAL FOR EXERCISE OF FMLA RIGHTS

61. Plaintiff engaged in activity protected by the FMLA by exercising her right to take leave under it.

62. An adverse action occurred in that Plaintiff was, subsequent to the start of such leave, subjected to one or more non-selections by Defendant, who is an "employer" under the terms of the Act.

63. Consistent with Defendant's having granted her FMLA leave, Plaintiff was eligible under the law to take such leave.

64. Plaintiff was treated less favorably than one or more employees who did not take FMLA, in that one or more of them were selected for positions to which they had applied. One or more non-selections occurred because she took FMLA.

65. Given the frequency and ease with which Defendant moves other employees to other jobs, and given her record of good performance, under ordinary circumstances it would have been expected that Defendant would have enabled Plaintiff to move laterally to a position away from the Conroe plant.

   65.1.   Defendant was notified by formal letter from Plaintiff's attorney on June 30, 2021 of her need to move to another job, but it appears Defendant took no meaningful action between then and the late August filing of this suit to find a lateral position into which Plaintiff could transition.

   65.2.   Management was notified she applied for and was being interviewed for such positions, but denied her the opportunity to lateral to another job, causing her to have to continue to remain out on medical leave and to use accrued sick leave.

66. As to the non-selections, one or more of the decisionmakers and/or those who influenced them were aware at the time of the non-selection that Plaintiff recently had taken protected FMLA leave.

67. For example, one of the hiring managers who went on to non-select her indicated that Plaintiff's supervisor at the Conroe job mentioned Plaintiff was out on extended medical leave. That is, her supervisor in effect punished her for taking FMLA leave.

68. [The transfer to Conroe in 2019 is not raised as FMLA retaliation.]

69. A non-selection is a sufficiently adverse action that it objectively could be expected to discourage another employee from exercising FMLA rights.

## D. HARM SUFFERED

70. Among the harms that Plaintiff has suffered as a result of the discrimination, reprisal, or both, described above are the following:

   70.1. Denial of the opportunity to receive the same benefits in contracting as is granted to persons who are not Black/African American.[3]

   70.2. Having to retain legal counsel to defend her and to seek protection from further violations, and thus incurring attorney fees and expenses and costs of court.

   70.3. Being discouraged from engaging in future activity protected under 42 U.S.C. § 1981, or under the FMLA, or both.

   70.4. Causing her to expend money for medical co-pays and deductibles that she otherwise would not have incurred.

   70.5. Causing damage to her professional reputation; causing her to lose promotional opportunities; causing her to endure emotional suffering, mental anguish, inconvenience, and loss of enjoyment of life; and causing her to suffer severe humiliation and embarrassment.

   70.6. To the extent that the violations by Defendant later result in her being compelled to retire, then also causing her loss of front pay.

---

[3] Plaintiff's observations from over the years at Conroe Phillips are that she would have been treated better had she been White, or male, or even more so if a White male, but in this suit, she focuses on the aspects of unfavorable treatment as to race.

70.7. Denying her the opportunity to lateral into one or more other positions (that here would enable to escape the job she was tricked into believing would be a promotion).

## E. RELIEF SOUGHT

71. Among the relief sought by Plaintiff for the wrongful actions of Plaintiff are:

71.1. An award of compensatory damages.

71.2. An award of attorney fees and expenses, plus costs of court.

71.2.1. For example, under 29 U.S.C. § 2617(a)(3) (allowing attorney fees and costs for a prevailing plaintiff in a FMLA claim) or 42 U.S.C. § 1988 (award of attorney fees for violation of § 1981 and § 1981a).

71.3. To the extent she is compelled to retire, lost front pay.

71.4. Reimbursement of co-pays and deductibles for medical care that is required as a result of Plaintiff's violations.

71.5. Retroactive placement in one of the positions for which she was non-selected.

71.6. A declaration Defendant violated one or both laws referenced above.

71.7. An injunction prohibiting Defendant from further violation of Plaintiff's rights, with ongoing monitoring by the Court of compliance.

71.8. To the extent that Defendant's conduct is found to rise to the level of malice making it appropriate, an award of exemplary damages as to the 42 U.S.C. § 1981 claim.

72. In the event Plaintiff later loses pay as a result of the FMLA reprisal, she seeks back pay plus an equal amount in liquidated damages.

73. Restoration of the sick leave she has been required to take due to be absent from work as a result of the emotional distress caused by Defendant's actions and failures to act.

74. Interest on amounts otherwise awarded.

75. Such other and further relief in law and equity to which she may be entitled.

## VI. JURY

76. Plaintiff requests a jury trial.

## PRAYER

FOR SUCH REASONS, Plaintiff asks that the Court award her relief like that described above and that it deny Defendant any relief.

Respectfully Submitted,

SCHLEICHER LAW FIRM, PLLC

By: /s/ David R. Schleicher
    David R. Schleicher
    Attorney-in-Charge
    Texas Bar No. 17753780
    SDTX Bar No. 38077
424 Clay Ave. #32688
Waco, Texas 76703
Telephone: (254) 776-3939
Facsimile: (254) 776-4001
Email: david@corplawfirm.com

ATTORNEYS FOR PLAINTIFF